IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cr-00208** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **MAURICE MAXWELL** | ) | |

**MEMORANDUM and ORDER**

Before the court is defendant Maurice Maxwell's Motion to Withdraw Guilty Plea and Request to Reopen Hearing on Motion to Suppress Evidence (Doc. No. 157), which the government opposes (Doc. No. 161). Finding that the defendant has provided a "fair and just reason" for requesting the withdrawal of his plea, Fed. R. Crim. P. 11(d)(2)(B), the court will grant the motion and set a new hearing on his prior Motion to Suppress Evidence.

## I. BACKGROUND

On August 14, 2019, defendant Maurice Maxwell was indicted by a federal Grand Jury in this district on charges of possession of methamphetamine with intent to distribute, being a previously convicted felon in possession of a firearm, possession with intent to distribute a substance containing a detectable amount of fentanyl, and possession of firearms in furtherance of a drug trafficking crime. (Doc. No. 1.)

Following the appointment of counsel, Maxwell filed a pretrial Motion to Suppress, challenging the legality of his initial detention and the subsequent search of his vehicle. (Doc. No. 37.) The court conducted an evidentiary hearing on January 29, 2021 and allowed post-hearing briefing. On April 13, 2021, the court issued an order denying Maxwell's Motion to Suppress, as well as co-defendant Tony Wright's similar motion. (Doc. No. 97.) In the absence of compelling

evidence to the contrary, the court credited the testimony of Officer Byron DeWalt that he was able to see into the defendant's vehicle in order to observe in plain view a bag of marijuana in the arm rest of the door on the driver's side of the car. Although the court had some skepticism about the ability of any person to see the armrest on the driver's side door through the driver's side window, the court nonetheless found "by a preponderance of the evidence that the marijuana in plain view coupled with the odor of marijuana emanating from Maxwell supplied the requisite probable cause to search the vehicle" (*Id.* at 20.) The ability of the officer to observe the interior of the vehicle was a significant question at issue during the hearing and was argued by both sides. In addition to skepticism about the angle of the view, the court questioned whether the window tint on the car on the date of the hearing was as dark as it was on the date of Maxwell's arrest. The court nonetheless ultimately held that photographs submitted into evidence did not conclusively establish that it would have been impossible to see inside the window. (*See id.* at 19 ("The photographs combined with Starks' testimony are not sufficient to override the credibility of Dewalt's testimony.").) As a result of the denial of the Motion to Suppress, the illegal narcotics and firearms found within the vehicle pursuant to the warrantless search of the defendant's vehicle would have been admitted as evidence during the government's case-in-chief if Maxwell proceeded to trial.

On July 13, 2021, three months after the denial of his Motion to Suppress, Maxwell entered a guilty plea to Counts One and Five of the Indictment, in conjunction with a Rule 11(c)(1)(C) plea agreement that provided for a sentence of 120 months, the statutory mandatory minimum sentence for the two counts to which he pleaded. (Doc. Nos. 122–23.) The court accepted the guilty

plea and took the binding plea agreement for a particular sentence under advisement.[1]

In November 2021, following entry of the plea but prior to sentencing, Maxwell's then-attorney moved to withdraw, stating that communication problems and a lack of trust between the attorney and his client made continued representation problematic. The court granted the motion and appointed new counsel. New counsel sought and obtained a continuance of Maxwell's sentencing hearing. (Doc. Nos. 148, 149.) On March 17, 2022, approximately a month prior to the postponed sentencing hearing, Maxwell, through his new attorney, filed the current Motion to Withdraw Plea.

The Motion to Withdraw is based on newly discovered evidence. Specifically, the defendant represents that, following the denial of his Motion to Suppress, his family conducted some independent investigation and obtained photographs of his vehicle from the Metropolitan Nashville Towing Lot that were taken following the October 12, 2018 police seizure of the vehicle. (*See* Doc. No. 165-1.) The family also discovered that Officer DeWalt had been subject to a disciplinary action in 2014. (*See* Doc. No. 157-4.) Further, newly appointed counsel has conducted additional investigation and found evidence that the defendant claims conclusively establishes that the window tint of the vehicle was so dark at the time of the arrest that it was nearly impossible to see inside it and that, simply based on the angle of the view, it would not have been possible for the police officers to see a bag of marijuana in the driver's side door handle through the driver's side window. Counsel states that she would be "able to make the vehicle available for the Court's inspection (which seems necessary given the Court's prior findings) and can offer testimony in

[1] In conjunction with the Motion to Withdraw Plea, Maxwell has submitted an Affidavit in which he expressly acknowledges that the advisory guideline range as reflected in the Presentence Investigation Report (262–327 months) is "significantly higher than the recommended sentence in the plea agreement." (Doc. No. 157-5, at 1.) "Knowing that [his] potential exposure is significant," he states that he nonetheless wishes to proceed with this motion. (*Id.*)

support of its condition at the time of Mr. Maxwell's arrest, confirming that the window tint has not been modified or changed since that time." (Doc. No. 157, at 3.)[2]

## II. LEGAL STANDARDS

A defendant has no right to withdraw his guilty plea. Rather, under Rule 11, "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a *fair and just reason* for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B) (emphasis added). The Sixth Circuit, like other circuits, has developed a multi-factor balancing test to guide district courts in the exercise of their discretion in deciding whether to grant a motion to withdraw a guilty plea. The factors in this circuit are the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000)).

No single factor controls. "The relevance of each factor will vary according to the 'circumstances surrounding the original entrance of the plea as well as the motion to withdraw.'" *Id.* (quoting *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)). Generally, however, "[t]he aim of Rule 1's fair-and-just-reason requirement is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision

[2] The defendant's long-term girlfriend testified to some of these assertions at the evidentiary hearing but, given other aspects of her testimony, was found by the court not to be a credible witness.

to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)). Consequently, courts regularly deny motions to vacate filed "after any substantial time has passed after the entry of the plea." *Id.* (citations omitted).

**III. ANALYSIS**

In this case the length of time between the entry of Maxwell's guilty plea and the filing of the motion to withdraw is eight months (four months after his initial counsel was permitted to withdraw and new counsel was appointed), an extremely lengthy time compared to other cases in which motions to withdraw have been granted. *Compare Alexander*, 948 F.2d at 1004 ("Alexander's delay of almost five months is certainly beyond the bounds of the time frame ordinarily considered appropriate for motions to vacate.") This factor, standing alone, weighs heavily in favor of denying the motion.

Regarding the third and fourth factors, Maxwell does not maintain his actual innocence, but he does maintain his legal innocence—meaning that he has consistently refuted the validity of the search of his vehicle, as demonstrated by the filing of the Motion to Suppress. He also asserts that the delay in entering his plea (following the denial of his Motion to Suppress) was occasioned by his strong feeling that his rights had been violated and that it was impossible for the officers to have seen inside his car. The government argues that the delay means that the defendant had plenty of time to consider his options and that the Plea Petition itself establishes that the defendant was well informed regarding the charges against him and had ample time to consult with counsel. (*See* Doc. No. 122 ¶ 4.) Further, the defendant swore under oath that he was satisfied with the representation of his counsel and that he entered the plea freely and voluntarily of his own accord. The government also points out that the terms of the Plea Agreement are "incredibly beneficial"

for the defendant, given that he would qualify as a career offender, the negotiated terms of imprisonment represents a significant downward departure from the calculated guideline range, and the government agreed not to object to running his federal sentencing concurrently with pending state charges. (Doc. No. 161, at 8.) The court finds that these factors weigh in the government's favor as well, despite the defendant's strong conviction that his Motion to Suppress should have been granted.

The fifth *Bashara* factor requires the court to consider the defendant's background to determine whether his "circumstances suggest an inability to understand the proceedings." *United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012). In this case, the defendant concedes that he graduated from high school and obtained at least a semester's worth of college credits. (Doc. No. 157, at 7.) Nothing in his background suggests any difficulty in understanding the proceedings. *See Martin*, 668 F.3d at 796 (holding that this factor weighed in favor of denying the defendant's motion to withdraw guilty plea where he had "some high school education, [spoke] English, and over the course of a lengthy colloquy regularly affirmed his understanding of the proceedings").

As for the sixth *Bashara* factor, the defendant has several prior convictions for serious offenses. He was also charged with other crimes while on pre-trial release for the charges in this case. This factor, too, weighs against him. *See United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007) (finding that the sixth factor weighed against the defendant where he had "a prior state conviction and is familiar with the criminal justice system").

In other words, most of the factors weigh, at least to some degree, against granting the defendant's motion. However, regarding the seventh factor, the government concedes that granting the motion would not significantly prejudice it. The only prejudice to which it points is that arising from having to try a case it thought was concluded.

More importantly, the court finds that the second factor weighs heavily in favor of granting the defendant's motion and that, under the particular circumstances presented by this case, this factor outweighs the others. The second factor asks whether the defendant has a valid reason for the failure to move for withdrawal earlier in the proceedings. The defendant argues that the delay in filing his motion is explainable by the fact that he was unaware of the disciplinary proceeding against DeWalt that might have enabled him to impeach DeWalt's credibility at the hearing;[3] the government's failure to turn over pictures of the seized vehicle that were taken while it was in the towing lot and under the control of the Metro police, which show the vehicle's darkly tinted windows; counsel's failure to call Maxwell's father to testify, as he could have testified to the condition of the vehicle and the darkness of the tint at the time he retrieved the car in November 2018 after its seizure by police in October 2018; and that he is now in possession of new evidence in the form of an investigator's affidavit, attesting that she observed the same car, at the same address, at roughly the same time of day under the same conditions, and can confirm that it is impossible to see anything on the driver's door's armrest through the driver's side window. (Doc. No. 157-2, at 2–3 and attached photographs.) The defendant also complains that his former counsel failed to interview the gun range manager, who could have attested to the darkness of the window tinting on the defendant's vehicle and would not have substantiated all aspects of Officer Michael Richardson's testimony.

The defendant explains the delay in filing the Motion to Withdraw Plea following the withdrawal of his former counsel by noting that "his new attorney needed to conduct investigation and evaluate the strength of Mr. Maxwell's argument to withdraw the plea, had to advise Mr.

[3] The court accords little weight to the new evidence of the 2014 disciplinary action against DeWalt. (Doc. No. 157-4.)

Maxwell of the ramifications of a motion to withdrawal, had to determine his advisory guideline range and had to answer various questions posed by Mr. Maxwell." (Doc. No. 157, at 5.)

The court finds that the defendant's explanation for the delay and the availability of new evidence together weigh strongly in favor of granting his motion—sufficiently strongly to outweigh the other factors that counsel against granting the motion. The court's consideration of these factors is admittedly informed by the court's own discomfort with the police officers' testimony at the hearing on the Motion to Suppress that they were able to see what they said they saw inside the car. The existence of probable cause to search the car hinged on the twin findings that marijuana was in plain view from the exterior of the car and that Maxwell smelled of marijuana. The latter finding, alone, would not have supplied the requisite probable cause, and the former rested largely on the relative credibility of Maxwell's girlfriend and the testifying police officers, because the physical evidence presented was not sufficient to establish one way or the other whether it was possible to see the marijuana in the car.

The court, in short, will grant the defendant's Motion to Withdraw Plea and will reopen the Motion to Suppress for the taking of additional evidence. The court will expect the defendant to make the subject vehicle available for inspection by the court and the government at or before the hearing.[4]

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, the defendant's Motion to Withdraw Guilty Plea (Doc. No. 157) is **GRANTED**, and the attendant request to reopen the hearing on the Motion to Suppress is likewise **GRANTED**.

[4] The court encourages the parties to agree on a pre-hearing inspection of the car by the government on the chance that such inspection may impact the proceedings.

The Memorandum and Order entered on April 13, 2021 (Doc. No. 97) is **VACATED** to the extent that it denied Maxwell's Motion to Suppress (Doc. No. 37). A further hearing on that motion is set for **May 18, 2020 at 1:00 p.m.** A status hearing will be held on May 9, 2022 at 11:00 a.m.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge